No. 83-421

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

_____

STATE OF MONTANA,

Plaintiff and Appellant,

-vs-

PATRICK LEO O'NEILL,

Defendant and Respondent.

_____

APPEAL FROM: District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Mark P. Sullivan, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Marc F. Racicot, Special Deputy County Attorney
for Gallatin County, Helena, Montana

For Respondent:

Moses Law Firm; Michael G. Moses, Billings,
Montana
Michael Stepanian, San Francisco, California

_____

Submitted on Briefs: November 23, 1983

Decided: March 15, 1984

Filed: MAR 1 1984

_Ethel M. Harrison_
——————————————————————————
Clerk

Mr. Justice L.C. Gulbrandson delivered the Opinion of the Court.

This case comes on appeal from an order of the District Court, Eighteenth Judicial District, Gallatin County, granting defendant's motion to suppress evidence seized pursuant to a search warrant. We reverse the decision of the District Court.

In March of 1982, Federal Bureau of Investigation Special Agent Bernard F. Hubley, assigned to the resident agency in Bozeman, Montana, initiated an investigation regarding the violation of state and federal narcotics laws by defendant O'Neill and his associates. During the course of his investigation Agent Hubley accumulated certain pieces of information which he determined warranted a search of O'Neill's residence. Accordingly, Agent Hubley obtained a search warrant based upon the following information contained in his affidavit of probable cause in support of the search warrant:

Agent Hubley learned that in 1975 O'Neill had pled guilty in California to charges arising from the transportation and possession of 640 pounds of marijuana. On September 28, 1982, Agent Hubley also learned from a Bozeman police detective that in 1977 O'Neill had delivered some laundry to a Bozeman laundromat for cleaning and the laundry contained 347 grams of marijuana. In addition to the information concerning the marijuana, Agent Hubley learned from another Bozeman police officer that on November 19, 1978, the detective had interviewed an informant named R.S. who had stated he had obtained cocaine from O'Neill in November of 1978 and that O'Neill had had a large quantity

of cocaine at his residence.

On June 26, 1982, a confidential informant, herein referred to as Informant No. 1, told Agent Hubley that a cocaine party had been held at O'Neill's residence located in Bridger Canyon on the evening of June 25, 1982. Informant No. 1 told Hubley that the cocaine party had been in celebration of O'Neill's selling his restaurant in Bozeman and that Informant No. 1 had personally observed O'Neill distribute cocaine to a number of individuals present at the party. Informant No. 1 also identified a number of individuals present at the party while O'Neill distributed the cocaine. Hubley stated that Informant No. 1 had provided reliable information in the past; specifically, that he had identified a street dealer of cocaine and made purchases under Hubley's direction and supervision on two separate occasions. Hubley also indicated that one of the two cocaine sources had distributed to other individuals in the past. Hubley also indicated that individuals Informant No. 1 identified as associates of O'Neill were, in fact, associating with him.

In May of 1982 a second confidential informant, herein referred to as Informant No. 2, told Hubley that he was personally acquainted with O'Neill and that O'Neill was associating with an individual named "Cody Madden" who was living in a rental house in Big Sky, Montana. Through independent investigation Hubley determined "Cody Madden's" residence and telephone number. Further investigation revealed to Hubley that a number of telephone calls were made from "Cody Madden's" house to a telephone in the name of L.J. Zimmerman located at 15325 Bridger Canyon Road.

Informant No. 1 told Hubley that he had personally observed the telephone number in O'Neill's residence and that this was the same number listed under the name of L.J. Zimmerman. Hubley had observed mailboxes near O'Neill's residence bearing addresses in the 15000's.

Through contact with the Baltimore division of the F.B.I., Hubley learned that "Cody Madden" was an alias used by James Patrick Fitzgibbons a fugitive from justice having been indicted by federal authorities on May 26, 1982, for conspiracy to distribute cocaine and distribution of cocaine. A cash bond of $500,000 had been requested for Fitzgibbons. During the six months prior to the date the search warrant was issued, Informant No. 1 and Informant No. 2 identified a photograph of Fitzgibbons as being the individual they knew as "Cody Madden."

Two days prior to the search of O'Neill's residence, Informant No. 1 told Hubley that O'Neill and his associates had made comments to Informant No. 1 to the effect that "Cody Madden" was coming to Bozeman. On October 16, 1982, Informant No. 1 told Hubley he had seen "Cody Madden" at O'Neill's residence. Informant No. 1 also stated that he had smelled marijuana at the residence at that time.

Hubley used the foregoing information in his affidavit for probable cause and request on October 16, 1982, for a search warrant for O'Neill's residence.

Hubley was unsuccessful in locating either a federal magistrate or a state district court judge to sign the application for search warrant. On the evening of October 16, 1982, Hubley made contact with Justice of the Peace Norma Schmall who read the application and issued the search

-4-

warrant. The search warrant stated that there was probable cause to search for Fitzgibbons at O'Neill's residence in addition to "cocaine, marijuana, and . . . instruments used in administering the narcotics including, roach clips, papers, cocaine spoons, mirrors . . . as well as containers . . . ."

During the execution of the search warrant, items other than those listed in the warrant were seized, including numerous jars of psilocybin, a cocaine grinder, smoking devices, drug packaging materials, vials, a vial loader with a screen, a hypodermic needle, a scale and drug records.

On December 20, 1982, O'Neill moved to suppress all evidence seized in the October 17, 1982 search of his residence. In making his motion, O'Neill argued that (1) the search warrant was issued without probable cause; (2) there was no authority to issue the search warrant for the purpose of making an arrest; (3) the information in the search warrant was stale; and (4) O'Neill's right to privacy had been violated. In addition, O'Neill argued that the drug records seized should be suppressed because they were not within the scope of the "plain view" doctrine.

A suppression hearing was held on June 9, 1983 and on July 15, 1983 the District Court ordered that all evidence seized in the search of O'Neill's residence be suppressed. The District Court held that the search for marijuana and cocaine was not based upon probable cause. Specifically, the District Court determined the dates on which the search warrant alleged O'Neill possessed and distributed cocaine were not close enough in time to the day on which the search

occurred. In addition, the District Court held that Informant No. 1's statement that he smelled marijuana at O'Neill's residence on the same day the search warrant was executed was not enough to establish probable cause. Finally, the District Court ruled that there was probable cause to search for Fitzgibbons but once it had been determined that Fitzgibbons was not on the premises the search should have ended and any evidence seized after that determination was made would be suppressed.

Initially, the State argues that the District Court erred in holding that the search warrant was not based upon probable cause.

The probable cause requirement for the issuance of a seach warrant is found in the Fourth Amendment to the United State Constitution: " . . . no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized," and in Article II, Section 11 of the Montana State Constitution: ". . . No warrant to search any place, or seize any person or thing shall issue without describing the place to be searched or the person or thing to be seized, or without probable cause, supported by oath or affirmation reduced to writing." When a search warrant has been issued, the determination of probable cause must be made solely from the information given to the impartial magistrate and from the four corners of the search warrant application. State v. Isom (1982), 196 Mont. 330, 641 P.2d 417; Thomsom v. Onstad (1979), 182 Mont. 119, 594 P.2d 1137. An affidavit supporting a search warrant is to be interpreted by the magistrate and examined by the

reviewing court in a common sense, realistic fashion and without a grudging or negative attitude that will tend to discourage police officers from seeking warrants. United States v. Ventresca (1965), 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684. Ventresca also requires reviewing courts to avoid hypertechnical interpretations of warrant applications and, in doubtful or marginal cases, to resolve the issue with the preference for warrants in mind. 380 U.S. at 108.

The issuing magistrate must only determine that there is a probability, not a prima facie showing of criminal activity. Beck v. Ohio (1964), 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142. The application for search warrant in the present case contained information that would have indicated to the magistrate that there was a fair probability that either contraband or Fitzgibbons were in a particular place. The affidavit stated that in 1975 the respondent had allegedly been arrested for possession of 640 pounds of marijuana. In 1977, 347 grams of marijuana had allegedly been found in respondent's laundry. In 1978, an informant had advised law enforcement officials that respondent possessed a large quantity of cocaine and had distributed it to the informant. In January and February of 1982, the respondent had been associating with James Patrick Fitzgibbons who became, in May 1982, a fugitive from justice, wanted for conspiracy to distribute and distribution of cocaine. In June, 1982, law enforcement officials had learned that the respondent distributed cocaine to a number of people at his residence. Two days before the respondent's home was searched a confidential informant advised Agent Hubley that Fitzgibbons was coming

to Bozeman. On October 16, 1982 the confidential informant had observed Fitzgibbons at the respondent's residence on two occasions and had reported the odor or marijuana emanating in the house on one of those occasions. Thereafter the magistrate determined that there was probable cause and signed the search warrant.

In Illinois v. Gates (1983), ____ U.S. ____, 103 S.Ct. 2317, 76 L.Ed.2d 527, the Court said:

> ". . . we affirm the totality of the circumstances analysis that has traditionally informed probable cause determinations. [citations omitted]. The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of the reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . concluding' that probable cause existed." Gates, supra, 103 S.Ct. at 2332, 76 L.Ed.2d at 548.

In the case at bar, the totality of the circumstances recited in the affidavit provided the issuing magistrate with a substantial basis for concluding that probable cause existed. The District Court erred in holding otherwise. The evidence collected by the law enforcement officials must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement. United States V. Cortez (1981), 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621.

In short, the quantity of information presented to the magistrate and the common sense evaluation of that information leads to the conclusion, as stated by the United

States Supreme Court in Gates, that there was a fair probability that contraband or Fitzgibbons would be found in respondent's residence. The respondent's previous drug related activities; the informant's information concerning cocaine distribution; the informant's information concerning the smell of marijuana at respondent's residence; and the informant's tip that a fugitive from justice wanted for distribution and possession of cocaine was present at respondent's residence are facts and circumstances described in the affidavit that indicated a fair probability that evidence of a crime was in a particular place. That is all that need be shown to establish probable cause. State v McKenzie (1978), 177 Mont. 280, 581 P.2d 1205.

The District Court correctly noted that in State v. Olson (1979), 180 Mont. 151, 589 P.2d 663, this Court stated that the odor of burning marijuana does not, by itself, establish probable cause to issue a seach warrant. However, that is not the situation in the case at bar. In State v. Means (1978), 177 Mont. 193, 581 P.2d 406, this Court said that the odor of marijuana, together with other facts tending to establish probable cause, is sufficient justification for an officer to enter a residence for the purpose of effecting a search.

The District Court also based its decision on the fact that the references to respondent's possession of cocaine in the application for a search warrant did not occur sufficiently close in time to the date on which the warrant was issued. However, in United States v. Johnson (10th Cir. 1972), 461 F.2d 285 the court addressed the issue of "staleness" stating:

-9-

> "Where the affidavit recites a mere isolated violation it would not be unreasonable to imply that probable cause dwindles rather quickly with the passage of time. However, where the affidavit properly recites facts indicating activity of a protracted and continuous nature, a course of conduct, the passage of time becomes less significant." Johnson, supra, 461 F.2d at 287.

The repeated alleged possession and distribution of dangerous drugs over a number of years, including marijuana and cocaine; the information provided by the informants; the presence of a fugitive wanted for cocaine at respondent's residence; and the evidence of drug possession and use on the day of the search, all of which were alleged in the warrant application, established a fair probability that respondent was engaged in dangerous drug activities of a continuous and protracted duration. As such, the issuing magistrate had a substantial basis for concluding that James Partick Fitzgibbons, dangerous drugs, particularly marijuana and cocaine and related paraphenalia, were all present at respondent's residence. It is important to note that after-the-fact scrutiny by the reviewing court of the sufficiency of an affidavit should not take the form of de novo review. Gates, supra, 103 S.Ct. at 2331, 76 L.Ed.2d at 547. A magistrate's "determination of probable cause should be paid great deference by reviewing courts." Spinelli v. United States (1969), 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637. Thus, the court in State v. Wieglus (S.D. 1979), 278 N.W.2d 805 stated: "Bearing in mind the general rule that every reasonable inference possible should be drawn to support the determination of probable cause made by the magistrate, (cite omitted) we conclude that the magistrate could properly have inferred that defendants were engaged in

an ongoing series of drug transactions . . ."

The respondent also argues that the affidavit of probable cause became "stale" once the determination was made that Fitzgibbons was not present at the residence. The District Court held that probable cause existed to search for Fitzgibbons but once it had been discovered he was not there all reasons to be in the premises ceased. Thus, according to the District Court, all evidence seized after that point, including the alleged drug records, had to be suppressed.

Initially, we note that the burden of proving that the search and seizure were unlawful shall be on the defendant. Section 46-13-302(4), MCA. The parties agreed that Fitzgibbons was not arrested as a result of the search of the residence but there is no indication in the record that Fitzgibbons was not present in the initial stages of the search. There is also no indication in the record pertaining to when the items not mentioned in the search warrant were discovered--whether it was before, after or during the search for Fitzgibbons. Accordingly, items seized in the search should also have been admissible under the "plain view" exception to the warrant requirement pursuant to the execution of the search warrant for Fitzgibbons. Items not described in a warrant may be seized under the plain view doctrine where: (1) there is prior justification for intrusion in the protected area; (2) the articles are in plain view; (3) incriminating nature of the articles is apparent; and (4) the discovery of the articles was inadvertent. Coolidge v. New Hampshire (1971), 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564. The respondent argues

that the alleged drug records do not fall within the plain view exception to the search warrant requirement because the officers read the records. Once the officers began to read the drug records, respondent asserts, the search was no longer for narcotics or for a person but, rather, for written records.

Initially, we note that Agent Hubley testified at the suppression hearing that the rooms in which the alleged drug records were seized were in a disheveled condition with papers and objects strewn about. Agent Hubley also stated that the alleged drug records were inadvertently observed, determined to be related to the items specified in the warrant and to have obvious evidentiary value without touching them, picking them up or rifling through them in any way. In addition, Agent Hubley testified drug records are frequently found during searches for narcotics.

In State v. Kelly (Mont. 1983), 668 P.2d 1032, 1038, 40 St.Rep. 1400, 1405, this Court said:

> "The Supreme Court's recent decision in Texas v. Brown, No. 81-419 (U.S. April 19, 1983), reiterates the rule that 'if, while lawfully engaged in an activity in a particular place, police officers perceive a suspicious object, they may seize it immediately.' Slip opinion at 8. (Emphasis added) Brown also relaxes rule (3) stated [in Coolidge]. Where under Coolidge, it must be 'immediately apparent to the police that they have evidence before them,' under Brown, probable cause to support a warrantless seizure of evidence in plain view is supplied by '[a] "practical, nontechnical" probability that incriminating evidence is involved. Slip opinion at 11.'"

Thus, a suspicion that the objects viewed are evidence or instrumentalities of a crime is sufficient to statisfy the requirement that the incriminating nature of the articles be

-12-

apparent. When the objects inadvertently perceived to be "suspicious" by police officers are drug records or other documents, clearly the officers should not be prevented from reading what is on them as long as the search does not include a detailed inspection of the objects or a violation of a reasonable expectation of privacy. The situation in the present case is similar to that in State v. Meader (Mont. 1979), 601 P.2d 386, 36 St.Rep. 1747, where the officers had to read the numbers on license plates to determine their evidentiary value. Also, in State v. Quigg (1970), 155 Mont. 119, 467 P.2d 692, this Court said: "That items or things other than those described in the warrant may be seized is clear so long as a reasonable relationship between the search authorized by the warrant and the seizure of the thing not described is demonstrated." In State v. Turner (1977), 18 Wash.App. 727, 571 P.2d 955, the court said: "Evidence not described in a warrant, and not constituting contraband or instrumentalities of a crime, may be seized if it will aid in a particular apprehension or conviction, or if it has sufficient nexus with the crime under investigation." The suspicious nature of the alleged drug records in this case was apparant, their discovery did not increase the scope of the search and they bore a sufficient nexus with the crime under investigation. Thus, the seizure of those records was lawful.

The respondent also asserts his constitutional right of privacy was violated through the commission of a trespass by Informant No. 1. Specifically, respondent argues that when Agent Hubley advised Informant No. 1 to verify Fitzgibbons' presence at respondent's residence, Informant

No. 1's subsequent entry into respondent's residence violated respondent's right of privacy. Respondent relies upon State v. Hyem (Mont. 1981), 630 P.2d 202, 38 St.Rep. 891, and State v. Van Haele (Mont. 1982), 649 P.2d 1311, 39 St.Rep. 1586, in seeking suppression of all evidence related to that alleged violation.

Initially, we note the informant did not take any evidence from respondent's residence. Moreover, when the respondent alleges that the evidence to be used against him is a fruit of a prior illegality, he has the initial burden of establishing an unconstitutional intrusion and a factual nexus between the intrusion and the challenged evidence. United States v. Kandik (9th Cir. 1980), 633 F.2d 1334. The respondent did not present any competent evidence supporting his allegation that the evidence was tainted.

Finally, respondent asserts that a law enforcement officer cannot obtain a search warrant in Montana for the purpose of seaching for and seizing a person unless that person has been kidnapped. Respondent points to Section 46-5-203, MCA which provides:

> "What may be seized with warrant. A search warrant may authorize the seizure of the following:
> (1) contraband;
> (2) any instruments, articles, or things which are the fruits of, have been used in the commission of, or may constitute evidence of any offense;
> (3) any person who has been kidnapped in another jurisdiction and is now concealed within this state."

In Steagald v. United States (1981), 449 U.S. 819, 101 S.Ct. 71, 66 L.Ed.2d 21, the United States Supreme Court held ". . . that the entry into a home to conduct a search or make an arrest is unreasonable under the Fourth Amendment unless

-14-

done pursuant to a warrant." Steagald, supra, at 211. In the application for search warrant, information concerning Fitzgibbons is set forth including the fact that a federal warrant had been issued for his arrest. Since Fizgibbons was determined to be in respondent's home, the holding in Steagald required that the police obtain a search warrant before entering the respondent's residence to arrest Fitzgibbons pursuant to the federal arrest warrant. "[I]n terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not be crossed without a warrant." Payton v. New York (1980), 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639. The law enforcement officers here were obliged to proceed not only in compliance with statutory requirements but also with federal constitutional mandates. Even though Section 46-6-104(3), MCA and Section 46-6-401(3), MCA would have statutorily allowed an entry into the respondent's home to arrest Fitzgibbons without a search warrant, the law enforcement officials were compelled to comply with the more stringent constitutional requirements of Steagald and obtain a search warrant.

The order of the District Court is vacated and the cause remanded for further proceedings.

_____
Justice

-15-

We concur:

_____
Chief Justice

_____

_____

_____
Justices