No. 88-353

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

_____

STATE OF MONTANA,

      Plaintiff and Appellant,

-vs-

JOHN PATRICK HEMBD,

      Defendant and Respondent

_____

APPEAL FROM:  District Court of the First Judicial District,
               In and for the County of Lewis and Clark,
               The Honorable Thomas C. Honzel, Judge Presiding.

COUNSEL OF RECORD:

      For Appellant:

            Hon. Marc Racicot, Attorney General, Helena, Montana
            Clay R. Smith, Ass't Attorney General, Helena
            Mike McGrath, County Attorney, Helena, Montana

      For Respondent:

            Lawrence A. Murphy; Harrison, Yeshe & Murphy, Helena, MT

_____

                Submitted on Briefs:  December 2, 1988

                      Decided:    January 12, 1989

Filed:

_____
                    ED SMITH
                     Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

The State of Montana appeals the order of the District Court, First Judicial District, Lewis and Clark County, Montana, filed on May 23, 1988, granting defendant's motion to suppress evidence seized from the trunk of his vehicle pursuant to a search warrant. We reverse the order of the District Court.

John Patrick Hembd was arrested in the early morning hours of March 16, 1988, following a phone call to the police department reporting that two persons were being held by a third person and were being forced to drive around in his car. The report stated that the vehicle was en route to a location in downtown Helena. Upon arriving at that location, officers observed the vehicle described in the report. The officers stopped the vehicle and the two occupants were taken into custody. At that time the defendant walked up to the vehicle and, after claiming it was his vehicle, was placed under arrest. Following the arrest, the Helena City Police Department immediately impounded Hembd's vehicle. He was subsequently charged by complaint with the felony offense of intimidation.

Later in the morning of March 16, 1988, Police Captain Jeff Bryson interviewed the two alleged victims. He observed the police reports filed by the arresting officers and presented the facts to the Lewis and Clark County Attorney's Office. The County Attorney's Office prepared an application for a search warrant, a search warrant, and a complaint charging Hembd with felony intimidation. The application cover sheet stated that the offense of intimidation had been committed, that Officer Bryson had good reason to believe that evidence and/or fruits of a crime, more particularly described as two semi-automatic handguns, were present in the

defendant's vehicle. The application further stated one of the handguns was located in the interior of the vehicle and the second weapon was located in the trunk of the automobile. The application stated the premises to be searched was a 1978 Buick Electra, silver in color, bearing Montana license plate number 3-202808, registered to John Patrick Hembd, and was located at the Al Rose impound lot at Chestnut and National Streets. Facts establishing grounds for probable cause for issuing the search warrant were attached in an affidavit and stated as follows:

> On or about the 15th and 16th days of March, 1988, two gentlemen, Jeff Hafer and John Ellingson, had a flat tire on their vehicle in the Helena Valley in the area of North Montana Avenue and Cedar Street. These two individuals were able to obtain a ride into town from a John Patrick Hembd to get a new tire. Mr. Hembd was driving a 1978 Buick Electra, silver in color, bearing Montana license no. 3-202808. During the course of the evening the trio decided to stop in a series of bars. Mr. Hembd was particularly interested in looking for a female by the name Dee Rowe. Mr. Hembd advised Hafer and Ellingson that if he saw Ms. Rowe he was going to kill her, and showed them a small semi-automatic handgun. During the course of the evening Mr. Hembd pointed the gun at both Mr. Hafer and Mr. Ellingson, and maintained a dangerous and threatening demeanor throughout. Both Hafer and Ellingson felt they had little choice in following Hembd's orders.
>
> Also, during the course of the evening, Mr. Hembd told Hafer and Ellingson that he had automatic weapons in the trunk of his vehicle. At one point, while the vehicle was parked in the City of Helena parking garage on the corner of Park and Sixth Avenues, Hafer and Ellingson looked in a gym bag located in the trunk of the vehicle, and saw a second semi-automatic handgun.

3

> During the course of the evening, Ellingson [Hafer] was forced to go into the Mini-Mart to obtain a hanger and purchase a carton of chocolate milk for Hembd. When Mr. Ellingson [Hafer] went into the Mini-Mart, Hembd had a handgun pointed at Mr. Hafer [Ellingson]. While in the store, Ellingson [Hafer] persuaded the clerk at the store to notify the police of their predicament and to advise them that they would be going to the Park Plaza when they left the Mini-Mart. Hembd was subsequently arrested by Helena Police officers in the aforementioned parking garage near the Park Plaza. He was searched but neither handgun was located on his person.
>
> It is the belief of Mr. Hafer and Mr. Ellingson, as well as your affiant, that a search of Mr. Hembd's vehicle is necessary to locate both handguns mentioned above.

The search warrant itself stated that the items sought were "two/ or more, semi-automatic handguns, one believed to be located in the interior of the vehicle and the second one is believed to be in the trunk of the automobile." (Emphasis added.) The justice of the peace, after asking Officer Bryson if the facts and assertions contained in the application for the warrant were true and accurate, issued the search warrant as prepared by the County Attorney's Office.

Officer Bryson and two other Helena police officers, Troy McGee, and Bryan Costigan, executed the search warrant on the vehicle. While neither McGee nor Costigan had viewed the warrant, they were told by Officer Bryson that they were looking for guns. The search was commenced in the trunk of the vehicle and the first item inspected was a small black bag, referred to as a shaving kit. Inside the black bag the officers found a white powdery substance. Proceeding with the search, the officers searched a larger dark bag and found

4

three handguns. The subsequent search of the other bags and containers in the trunk produced the following items: ammunition, plastic bags containing an unknown powdery substance, empty glass vials, a scale commonly associated with illegal drug activity, lock picking devices, electronic radio scanning equipment, and radio call guides listing local law enforcement frequencies. The officers then proceeded to search the interior of the vehicle where a semi-automatic pistol was found on the back seat of the car underneath some clothing.

On March 24, 1988, the defendant was charged by information with the following counts: (1) felony intimidation, in violation of § 45-5-203(1)(a), MCA; (2) felony theft, in violation of § 45-6-301(1)(c), MCA; (3) misdemeanor possession of burglary tools, in violation of § 45-6-205(1), MCA; and (4) felony criminal possession of dangerous drugs with intent to sell, in violation of § 45-9-103(1), (3), MCA. The defendant filed a motion to suppress on April 14, 1988, seeking suppression of all evidence seized from the trunk of the vehicle. After a hearing the motion was granted by memorandum and order filed on May 23, 1988. The State appeals the suppression order and presents the following issues for review:

1. Whether probable cause existed for issuance of the March 16, 1988, search warrant authorizing a search of defendant's vehicle trunk.

2. Whether the plain view doctrine authorized the March 16, 1988, seizure of incriminating items other than handguns from the defendant's vehicle trunk.

3. Whether suppression of incriminating evidence seized from the defendant's vehicle trunk in reliance on the validity of the March 16, 1988, search warrant is appropriate under the exclusionary rule.

5

I.

The State initially raises the question of whether the District Court erred in its finding that sufficient nexus did not exist for probable cause to search the trunk of the defendant's vehicle. The District Court based its holding of a lack of probable cause on the finding that the victims gave no indication Hembd intended to use the gun in the trunk to intimidate them. Also, the gun in the trunk was not alleged to constitute any manner of contraband. For these reasons, the District Court granted the defendant's motion to suppress all the evidence seized from the defendant's vehicle trunk.

A person's right to be free from unreasonable and/or warrantless searches and seizures is based upon the Fourth Amendment to the United States Constitution and Article II, sec. 11 of the Montana Constitution. The Montana Constitution states:

> [N]o warrant to search any place, or seize any person or thing shall issue without describing the place to be searched or the person or thing to be seized, or without probable cause, supported by oath or affirmation reduced to writing.

The requirements for issuing a search warrant call for an impartial magistrate to determine the existence of or lack of probable cause from the "four corners" of the search warrant application. State v. O'Neill (1984), 208 Mont. 386, 393, 679 P.2d 760, 763-764, citing State v. Isom (1982), 196 Mont. 330, 641 P.2d 417; Thompson v. Onstad (1979), 182 Mont. 119, 594 P.2d 1137. The magistrate and the reviewing court shall interpret and examine the affidavit supporting the application in a common sense, realistic fashion, avoiding hypertechnical interpretations. The preference is to encourage the police to seek warrants and in marginal cases the reviewing court should keep this preference for warrants in mind. O'Neill, 679 P.2d at 764, citing United States v.

6

Ventresca (1965), 380 U.S. 102, 108-109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684, 689.

The reviewing court should also remember the standard for issuing the search warrant is the existence of "a probability, not a prima facie showing of criminal activity." O'Neill, 679 P.2d at 764, citing Beck v. Ohio (1964), 379 U.S. 89, 85 S.Ct 223, 13 L.Ed.2d 142. That probability will be determined using a totality of the circumstances analysis, based upon the circumstances set forth in the affidavit. O'Neill, 679 P.2d at 764, citing Illinois v. Gates (1983), 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527. The reviewing court's examination is limited to whether the magistrate had a substantial basis for concluding probable cause existed. O'Neill, 679 P.2d at 764, citing Gates, 462 U.S. at 238, 103 S.Ct. at 2332, 76 L.Ed.2d at 548.

Our examination of the affidavit in this case leads us to find a substantial basis existed in the affidavit to allow the magistrate to find probable cause to issue the warrant. The defendant was charged with felony intimidation of Jeff Hafer and John Ellingson. Officer Bryson's affidavit identifies how the two individuals came under Hembd's control, the vehicle in which they drove him around, the fact Hembd was looking for one Dee Rowe and would kill her when he found her, the fact Hembd pointed a semi-automatic pistol at each of the individuals, and had exhibited a dangerous and threatening manner. The affidavit also notes that Hembd told the individuals he had automatic weapons in the trunk and at one point, while the vehicle was parked the individuals looked in a gym bag in the trunk and saw a second semi-automatic handgun. Upon Hembd's arrest neither handgun was found on his person.

From the four corners of this affidavit, the justice of the peace was asked to find probable cause to permit a search of the vehicle for two or more handguns. The "or more"

7

portion was not included in the application for the search warrant, but was present in the actual search warrant.

The defendant contends, and the District Court agreed, that a nexus cannot be developed between the gun(s) located in the trunk and the crime of felony intimidation for which the gun(s) constituted evidence. Subsection (1) of the intimidation statute § 45-5-203, MCA, contains the elements necessary to constitute intimidation.

> (1) A person commits the offense of intimidation when, with the purpose to cause another to perform or to omit the performance of any act, he communicates to another, under circumstances which reasonably tend to produce a fear that it will be carried out, a threat to perform without lawful authority any of the following acts:
>
> (a) inflict physical harm on the person threatened or any other person;
>
> (b) subject any person to physical confinement or restraint; or
>
> (c) commit any felony.

Taking notice of this Court's prior holding in O'Neill that the evidence collected should not be viewed in terms of "library analysis by scholars," but in terms of those "versed in the field of law enforcement," we find sufficient information existed to establish probable cause to search the trunk. O'Neill, 679 P.2d at 764, citing United States v. Cortez (1981), 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621. A fair probability existed that a search of the vehicle would uncover the gun with which the defendant intimidated the individuals, and automatic weapons in the trunk with which the individuals believed he would harm them and kill Dee Rowe.

Analyzing the affidavit in light of § 45-5-203, MCA, we find the defendant communicated to the individuals a threat

8

to kill Dee Rowe. Section 45-5-203(1), MCA. In brandishing the pistol in the car and communicating the presence of automatic weapons in the trunk, the defendant produced a fear in the individuals that he intended to and had the ability to kill Dee Rowe. Section 45-5-203(1)(a), MCA. Evidence of the fear created is deduced from the fact that the individuals were sufficiently fearful for their safety and that of Dee Rowe, that Jeff Hafer requested the clerk at the Mini-Mart to call the police. The statements by the individuals that they had seen a semi-automatic handgun in the trunk established sufficient probability to authorize a search of the trunk for that handgun and other weapons which the defendant claimed to have at his disposal.

Defendant contends that the affidavit contains inaccuracies which render reliance upon it void as a matter of law. These inaccuracies were that the defendant did not maintain a dangerous and threatening demeanor throughout the evening, and whether or not the individuals were actually ordered to drive the defendant to various places. We initially note that while these statements were not totally accurate, they are not untrue. The threat to kill Dee Rowe when he found her constitutes a dangerous and threatening action on the defendant's part. That the individuals did not feel themselves in danger until after they observed that Hembd had seen them looking in the trunk does not alleviate the dangerous and threatening action exhibited throughout the evening toward Dee Rowe. Further, both individuals' statements show they felt compelled to drive Hembd back to the Park Plaza from the Mini-Mart where they had obtained the coat hanger he needed to break into the Park Plaza. They had both observed him pointing a handgun at the other while they were outside the Mini-Mart. We also note that the affidavit was prepared by the County Attorney based upon Officer Bryson's recollection of the individuals' statements and the

9

arresting officers' reports. While we do not condone the presence of inaccuracies in search warrant applications, under these circumstances we do not find the cited inaccuracies defeat the application. Further, after excising the inaccurate portions of the statements, the affidavit still establishes sufficient probable cause to issue the search warrant. Franks v. Delaware (1977), 438 U.S. 154, 171-172, 98 S.Ct. 2674, 2684, 57 L.Ed.2d 667, 682.

For the foregoing reasons we find the District Court erred in granting the motion to suppress.

## II.

Appellants second issue was not addressed by the District Court as the court had found a lack of probable cause to enter the trunk. As we have found the District Court erred in its decision, we feel some guidance is in order regarding the second issue. At the suppression hearing, the defendant contended that if probable cause was found to search the trunk, any other items found besides the gun(s) found in the gym bag should be suppressed under the "plain view" doctrine. The defendant contends the search warrant would not permit the officers to search any bag or container other than the gym bag mentioned in the affidavit. Evidence seized from any other closed bag or container would not fall within the plain view doctrine. Defendant further contends that the officers did not find the drugs and burglary tools inadvertently.

This Court has previously held that four requirements must be met to seize items which are not described in a warrant under the plain view doctrine. There must be a prior justification for the intrusion into the protected area. The articles must be in plain view. The incriminating nature of the items must be apparent. Finally, the discovery of the articles must be inadvertent. State v. O'Neill (1984), 208 Mont. 386, 397, 679 P.2d 760, 766, citing Coolidge v. New

10

Hampshire (1971), 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564.

"The plain view doctrine authorizes seizure of illegal or evidentiary items visible to a police officer whose access to the object has some prior Fourth Amendment justification and who has probable cause to suspect that the item is connected with criminal activity." Illinois v. Andreas (1983), 463 U.S. 765, 771, 103 S.Ct. 3319, 77 L.Ed.2d 1003, citing Texas v. Brown (1983), 460 U.S. 730, 738, and n. 4, 741-742 (plurality opinion); id. at 746 (Powell, J., concurring in judgment); id. at 748, 749-750 (Stevens, J., concurring in judgment). Here the police officers were searching the vehicle under authority of a search warrant for two or more handguns. The warrant placed one of the handguns in the interior of the vehicle and one in the trunk. Having previously held that the warrant was properly issued, the officers access and search of the trunk was justified.

The United States Supreme Court has held that a lawful search of fixed premises will extend "to the entire area in which the object of the search may be found . . ." United States v. Ross (1982), 456 U.S. 798, 820, 102 S.Ct. 2157, 2170, 72 L.Ed.2d 572, 591. "A warrant to search a vehicle would support a search of every part of the vehicle that might contain the object of the search." Id. at 821. In the instant case the warrant authorized the search of the vehicle, particularly the interior and the trunk, for two or more handguns. In executing the warrant, the officers were justified in searching those areas of the vehicle and examining the contents of containers which might contain the object of the search.

While lawfully engaged in executing the search warrant, the officers were justified in immediately seizing suspicious objects, such as contraband, stolen property or incriminating evidence. Texas v. Brown, supra, 460 U.S. at 739. The

11

evidence seized here consisted of some white powdery substance, believed to be drugs, along with the a scale and plastic bags and vials normally associated with the distribution of drugs, and lock picking tools and communications equipment normally associated with burglary tools. It is a preferred practice to stop upon the initial discovery of such items in an impounded vehicle, and secure a search warrant which would allow a more extensive search of the vehicle. However, we find that the failure to do so in this instance does not justify suppression of the evidence seized as the containers searched were all capable of concealing guns, the object of the search.

The defendant bases his contention of a lack of inadvertence upon the fact that Officer Bryson knew of the possible existence of drugs in the trunk from his interviews with the two victims. Further, the two officers who conducted the search admitted having read the arrest report circulated earlier that morning which mentioned the possible presence of drugs. The victims' statements referred to Hembd's comments that he had a half-pound of "crank" and automatic weapons in the trunk and that he was known as Lock Picking John. The defendant claims the officers search for guns in the trunk was a fishing expedition to test the accuracy of these statements. He claims the officers knew that probable cause did not exist for a warrant to search for drugs or burglary tools.

Since the United States Supreme Court adopted inadvertence as a requirement for seizing evidence or contraband under the plain view doctrine, the courts have attempted to define what level of inadvertence is necessary. In United States v. Freeman (5th Cir. 1982), 685 F.2d 942, at 954, n. 7, the Fifth Circuit Court of Appeals stated:

> [I]nadvertence does not require the police to be totally dumbfounded or surprised by the discovery of the

> incriminating evidence; the fact that its
> presence may be "within the realm of
> foreseeable possibilities," . . . or even
> expected, does not destroy inadvertence
> if the police did not arrive specifically
> planning to look for the evidence.
> (Citations omitted.)

The Second Circuit later identified when the inadvertent discovery rule would apply.

> [F]or the inadvertent discovery rule to
> apply to the present case, it must appear
> that prior to the issuance of the warrant
> the police could reasonably and in good
> faith either have failed to recognize the
> existence of probable cause or believed
> that there was insufficient evidence of
> probable cause to search for the money.
> See United States v. Wright, 641 F.2d
> 602, 606-07 (8th Cir.1981); 2 W. LaFave,
> § 4.11 at pp. 179-83.

United States v. $10,000 in U.S. Currency (2nd Cir. 1986), 780 F.2d 213, 218. In the instant case we note that Officer Bryson was aware of the possible presence of drugs and other evidence; however, his evaluation, after consultation with the County Attorney, was that he did not have probable cause to seek a search warrant for those items. As the Second Circuit stated:

> Once government agents conduct a search
> pursuant to a valid search warrant, their
> earlier suspicions do not make discovery
> of weapons [drugs and burglary tools in
> this case] actually found in plain view
> premeditated. Nor is the existence of
> probable cause, unrecognized by the
> police, sufficient to bar discovery as
> not inadvertent. Such a purely
> "objective" approach would exclude
> important evidence simply because the
> police "by oversight or acting from an
> abundance of caution or out of a
> misapprehension of what it takes to
> obtain a search warrant covering that
> evidence, failed to include that item in

13

the warrant executed."  2 W. LaFave, §
4.11 at 181.

$10,000 in U.S. Currency, 780 F.2d at 218.  We agree with the position taken by the Second Circuit.  The cautious actions of law enforcement officials in seeking to protect the validity of the warrant should not invalidate the inadvertent seizure of evidence or contraband where the officers conducting the search adhere to the intent contained in the search warrant.

Having determined previously that the search warrant was issued with probable cause we find the exclusionary rule does not come into play and that we need not discuss whether the good faith exception is applicable.  The decision of the District Court is reversed and the case is remanded for further action in compliance with this opinion.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices

14