No. 96-666

IN THE SUPREME COURT OF THE STATE OF MONTANA

998 MT 68N

STATE OF MONTANA,

Plaintiff and Respondent,

v.

THOMAS A. AUL,

Defendant and Appellant.

APPEAL FROM:   District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable Douglas Harkin, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Jeffrey T. Renz, Montana Defender Project,
University of Montana School of Law, Missoula, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General;
Jennifer Anders, Assistant Attorney General, Helena, Montana

Robert Deschamps, III, Missoula County Attorney,
Karen Townsend, Deputy Missoula County Attorney,
Missoula,
Montana

Submitted on Briefs: March 5, 1998

Decided:   March 31, 1998
Filed:

_____
Clerk
Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2 Appellant Thomas Aul (Aul) appeals from the findings of fact, conclusions of law, and order of the Montana Fourth Judicial District Court, Missoula County, denying his motion to suppress. Aul was convicted of criminal possession of dangerous drugs with intent to sell, criminal possession of dangerous drugs, and criminal possession of drug paraphernalia. We address whether the District Court erred in refusing to suppress the evidence seized in searches of Aul's business and home.

Factual and Procedural Background

¶3 In May 1992, Larry Jacobs (Jacobs), a detective for the Missoula County Sheriff's Department, Narcotics Division, received a telephone call from a paid, confidential informant. The informant told Jacobs that Aul and his wife, Ellen, now deceased, owned a business at 331 W. Railroad Street in Missoula. The informant told Jacobs that the Auls had a history of drug-related activity and that he believed they were currently involved in drug distribution. The informant stated that he had seen the building and did not believe that any legitimate business activity was taking place there.

¶4 The informant's tips had previously resulted in three arrests and one conviction for drug-related activity. Jacobs had personally received reliable information from this individual in the past and knew him to be truthful. To Jacobs' knowledge, the informant had no criminal record and was not the subject of any criminal investigation. However, Jacobs suspected that the informant had not been to the Railroad Street building personally.

¶5 To verify the informant's information, Jacobs contacted the Montana Power Company and was told that the Auls were responsible for the power bill at 331 W. Railroad Street and also at 120 River Pines Road, a residence in Missoula's Big Flat area. Jacobs ran a NCIC search and discovered an outstanding warrant for Ellen Aul's arrest in California on a felony drug charge. Jacobs attempted to determine whether the warrant was still valid and, after the search warrant had been executed, discovered it was not.

¶6    Jacobs drove to 331 W. Railroad Street, which housed a large, old, warehouse building, and conducted a brief external investigation.  A sign reading "The Electric Shop" hung over the door of the warehouse.  Jacobs observed boarded-up windows and vents on the side of the building.  He looked in one of the vents and saw a dead bird smashed between the shutter and screen.  He did not smell anything coming from the vent.  Jacobs discovered that the building was listed as vacant in the city directory and that the Auls had occupied the building since January 1988.  Jacobs, who grew up in Missoula, knew that the building's windows had been boarded up for as long as he could remember and that "The Electric Shop" sign had hung on the building since the 1920s or 1930s.

¶7    Jacobs then contacted an acquaintance who lived near the Auls in the River Pines area.  This person told him that the Auls had no apparent source of income and did not appear to keep normal working hours.  The neighbor also told Jacobs that the Auls lived in an expensive home, owned horses and a new car, and took frequent trips of no longer than three days.  Jacobs drove to the River Pines residence and confirmed that it was a nice home.

¶8    A criminal background check revealed that Aul was convicted of marijuana cultivation in 1973 and that in 1982 the Auls were arrested in California with 50 pounds of marijuana and a .22 caliber rifle.  Jacobs obtained an investigative subpoena for the power records at 331 W. Railroad Street.  The records showed that prior to the Auls' occupation of the building, the average monthly power usage was between 500 and 1000 kilowatt hours.  By March 1988, the power consumption had tripled and, by 1992, had steadily increased to a level ten times higher than with the previous occupant.

¶9    Jacobs filed an application for a search warrant, setting forth the facts he believed constituted probable cause and attaching the information he had obtained from the Montana Power Company.  Jacobs described the current state of the building at 331 W. Railroad, but did not inform the court that the building had been virtually unchanged for as long as he could remember.  The reviewing judge issued a search warrant for the building.

¶10   In executing the warrant, Jacobs and two other officers found 290 marijuana plants.  The also seized evidence of a marijuana grow operation, including high-wattage halide lights, ventilation fans, timers, a wash tub of "marijuana shake," books on marijuana cultivation, records, and other growing equipment.  Jacobs then obtained a warrant to search the Auls' home, where he found more than 60 grams of marijuana, scales, drug paraphernalia, and additional records.

¶11   The Auls were charged with criminal possession of dangerous drugs, criminal possession of dangerous drugs with intent to sell, and criminal

possession of drug paraphernalia.  The Auls moved to suppress the evidence seized in the searches of the Railroad Street building and their home, arguing that the application failed to establish probable cause and that Jacobs misled the judge when he failed to include information known to him in the warrant application.  The District Court denied the motion, and the Auls were convicted on all three counts.  Ellen Aul died prior to sentencing, and Aul was sentenced to a term of 25 years in the Montana State Prison.

## Standard of Review

¶12  We review a district court's denial of a motion to suppress to determine whether the court's findings of fact are clearly erroneous and whether the findings were correctly applied as a matter of law.  State v. New (1996), 276 Mont. 529, 533, 917 P.2d 919, 921.  A finding of fact is clearly erroneous if it is not supported by substantial evidence, if the district court misapprehended the effect of the evidence, or if we have a firm conviction that the district court has made a mistake.  State v. Cassell (1996), 280 Mont. 397, 400, 932 P.2d 478, 479.

## Discussion

¶13  For a search warrant to issue, the applicant must state under oath or affirmation: (1) facts sufficient to support probable cause that an offense has been committed and that contraband connected with the offense may be found; and (2) describe with particularity the places to be searched and items to be seized.  Section 46-5-221, MCA; State v. Kaluza (1995), 272 Mont. 404, 901 P.2d 107.  The magistrate reviewing the application must, in light of the totality of the circumstances and using common-sense, determine whether there is a fair probability that contraband or evidence of a crime will be found in a particular place.  State v. O'Neill (1984), 208 Mont. 386, 394, 679 P.2d 760, 764 (citing Illinois v. Gates (1983), 462 U.S. 213).  The magistrate's determination of probable cause is limited to the four corners of the search warrant application.  State v. Adams (Mont. 1997), 943 P.2d 955, 54 St.Rep. 717.  Based on the informant's tip, the Auls' past drug-related activity, the increased power usage, their apparent lack of occupation and relatively high income, and the appearance of the warehouse, the reviewing judge found that Jacobs' application demonstrated probable cause.

¶14  An informant's tip may support probable cause if it is determined that the informant and the information he provides are reliable.  Kaluza, 901 P.2d at 111.  In the warrant application, Jacobs stated that an informant had told him that the Auls had a past history of drug-related activity and that it appeared they were dealing drugs out of the building at 331 W. Railroad.  An informant may be considered reliable when he or she is known to the police and has provided truthful information in the past.  State v. Rinehart (1993), 262 Mont. 204, 864 P.2d 1219.  In this case, Jacobs had worked with this informant and knew that his past tips had led to three arrests and one conviction on drug-related charges.

¶15  Aul argues that the informant in fact received the information second-hand find that the information he provided was reliable.  Jacobs did not state in his application where the informant had obtained his information and did not inform the judge that he suspected the informant may not have been to the building personally.  However, all of the information provided by the informant was confirmed by Jacobs' independent investigation, thus confirming its reliability.  The reviewing judge did not err in relying, in part, on the informant's tip in making a probable cause determination.

¶16  The District Court also considered Aul's past drug-related activity, an arrest for possession of marijuana and conviction for marijuana cultivation, the Auls' power usage, which was nearly ten times higher than that of the former occupant, and the Auls' apparent lack of income and relatively affluent lifestyle.  Aul argues that each of these activities is facially innocent and, though not inconsistent with illegal activities, does not give rise to probable cause.  However, viewing these activities in the totality of the circumstances, the reviewing judge did not err in determining that there was a fair probability that the Auls were engaged in criminal activity and that contraband would be found at 331 W. Railroad and at the Auls' residence.

¶17  In addition to contesting what was contained in the warrant application, Aul takes issue with what was omitted.  Jacobs included the following information about the warehouse in the warrant application:

> The sign over the front door states, "The Electric Shop."  Det.
> Jacobs and Peterson observed this warehouse to have metal
> siding and all the windows of the business are covered.  Two
> different vents were also observed on the north and east side of
> the warehouse.  It was also learned that the city directory shows
> 331 W. Railroad as a vacant building.  In checking the
> phonebook, there is no listing for "The Electric Shop."

Aul contends that Jacobs misled the reviewing judge by failing to include facts that were known to him: (1) that the sign had hung on the warehouse and that the windows had been boarded since at least the 1930s; (2) that the vents on the warehouse were broken; and (3) that the warehouse had been abandoned for as long as Jacobs could remember.  Aul argues that these omissions were material and that the application would not have set forth probable cause for the search had it included this information.

¶18  A defendant arguing that a facially valid warrant application contains false statements or knowingly omits material facts must prove: (1) that the information was false or knowingly omitted; and (2) that probable cause does not exist with the false information excised or the omitted information included.  State v. Garberding (1990), 245 Mont. 356, 801 P.2d 583 (citing Franks v. Delaware (1978), 438 U.S. 154).  While we agree that Jacobs should have included all of the relevant information in the warrant application, we

hold that even with the omitted information the application would still have contained sufficient facts on which to base a finding of probable cause.

¶19  By failing to inform the reviewing judge that the warehouse had existed in its present condition for as long as he knew, Jacobs allowed the judge to infer that the Auls had hung the sign to create the impression of a legitimate business.  Further, by stating that all the windows had been "covered" rather than explaining that the windows had been boarded up for years, Jacobs risked giving the judge the false impression that the Auls took such action to hide their activities inside the warehouse from the public.  However, regardless of whether the Auls hung the sign or covered the windows themselves, they were still making use of a boarded-up warehouse with a sign representing a defunct business.  This information, when combined with the Auls' increased power usage, history of drug-related activity, and affluent lifestyle, provided a sufficient basis for probable cause.

¶20  Based on the foregoing, we affirm the decision of the District Court.


/S/   W. WILLIAM LEAPHART

We concur:

/S/   J. A.  TURNAGE
/S/   TERRY N. TRIEWEILER
/S/   JAMES C. NELSON
/S/   WILLIAM E. HUNT, SR.