No. 88-439

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

---

STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

WILLIAM LEE SEAMAN,

Defendant and Appellant.

---

APPEAL FROM: District Court of the Second Judicial District,
In and for the County of Silver Bow,
The Honorable Mark Sullivan, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Deirdre Caughlan; Dunlap & Caughlan, Butte, Montana

For Respondent:

Hon. Marc Racicot, Attorney General, Helena, Montana
Kathy Seeley, Asst. Atty. General, Helena
Robert M. McCarthy, County Attorney; William O'Leary,
Deputy County Atty., Butte, Montana

---

Submitted on Briefs: Feb. 16, 1989

Decided: March 30, 1989

Clerk

Filed:
'89 MAR 30 AM 10 58
ED SMITH, CLERK
MONTANA SUPREME COURT

Mr. Justice R. C. McDonough delivered the Opinion of the Court.

This appeal arises from the conviction for possession of dangerous drugs of appellant William Seaman in the Second Judicial District, Silver Bow County. We affirm.

## Issues

(1) Whether the police lacked probable cause to search Seaman's residence?

(2) Whether the search of Seaman's residence was overly intrusive?

(3) Whether police testimony constituted grounds for declaring a mistrial?

(4) Whether the speed with which the jury delivered its verdict demonstrates the jury did not follow or read the instructions, consider the evidence or follow their charge?

## Facts

Undersheriff Joe Lee told Detective John Walsh that three reliable informants had provided information indicating a probability that Seaman was engaged in illegal activity. All three informants told Lee that Seaman was selling heroin in Butte for $40.00 a "bag". One of the informants gave police a list of individuals who had purchased heroin from Seaman. Another of the informants provided a description and address for Seaman's residence, and stated that Seaman currently possessed a quantity of heroin and opium at that residence.

The first informant gave information on Seaman's activities on December 29, 1987. The second informant revealed information on Seaman on January 7, 1988. The third

spoke to police on January 21, 1988, concerning the sale of heroin by Seaman.

Lee communicated the information from the informants to Detective Walsh. Walsh incorporated this information in his Application for Search Warrant to Justice of the Peace M. A. Bartholomew on January 21, 1988. The application also included sworn statements by Detective Walsh that: the informants had provided reliable information to law enforcement officials in the past; that the activities described were consistent with information possessed by Butte officials on the drug trade currently and for the past ten years in Butte; and that a check with Mountain Bell Telephone Company and Montana Power Company indicated the presence of Seaman's wife, Lorraine Seaman, at the residence on 1117 Maryland Avenue, Butte, Montana.

On January 21, 1988, Justice of the Peace Bartholomew found from the application that probable cause existed for issuing a warrant authorizing a search of the residence on 1117 Maryland Avenue, Butte, Montana. On the same day Detective Walsh and several other officers went to the home and executed the warrant. Lorraine Seaman and her seven year old son answered to Walsh's knock on the door, and Walsh and the other officers entered after informing Mrs. Seaman that they possessed authority to search.

Evidence presented at trial revealed the following: Walsh "secured" the area by walking through the house with his gun drawn and pointed at an angle toward the floor. He first encountered Mrs. Seaman's father, Harry Nygard, who had come to the house that day to perform repairs on the freezer. Mr. Nygard and the Seaman youngster were ordered by police to sit on a bed located in the house while police continued the search. Walsh discovered the defendant in the bathroom after hearing the toilet flush. He ordered Seaman out of the

bathroom and searched the area. In a basket on top of the washing machine Walsh found syringes filled with a brownish liquid. Walsh also found a small container holding a dark tar-like substance in an open towel cabinet in the bathroom. Both substances were identified at trial by a state's witness as heroin. Walsh also found items suspected to be drug paraphernalia.

Seaman asked Walsh what he was looking for directly after or during the time Walsh searched the bathroom. Walsh replied, "heroin," and Seaman responded, "you got me."

During the search Mr. Nygard collapsed from an apparent heart attack. Police officers called for an ambulance and attempted to revive Mr. Nygard. Mr. Nygard was taken to the hospital and died later that night.

## I.

Seaman contends that under the constitutional requirements prohibiting unreasonable searches and seizures, and under § 46-5-202(b), MCA, requiring facts sufficient to demonstrate probable cause prior to issuance of a warrant, the District Court erred in denying his suppression motion. There are several contentions advanced by Seaman under this issue. First, he contends Undersheriff Lee rather than Detective Walsh should have sworn to the information in the application. See State ex rel. Sanford v. District Court (1976), 170 Mont. 196, 551 P.2d 1005. In Sanford this Court ordered suppression of evidence generated through a warrant issued to "any Peace Officer of this State."

Seaman also contends that the totality of the circumstances fails to support a finding of probable cause. Seaman further argues that the lower court should have ordered the State to reveal the identities of the informants,

4

and that the search was overly intrusive because abusive police conduct resulted in the death of Harry Nygard.

A. **The applicability of Sanford**: Seaman contends that Sanford mandated exclusion of the evidence from the search. The warrant was defective in Sanford because section 95-703 R.C.M.1947, now § 46-5-201, MCA, requires that a search warrant be directed to a peace officer. As explained in State v. Snyder (1975)(Daly, J., concurring), 168 Mont. 220, 231, 541 P.2d 1204, 1210, the mandate that the warrant be directed to a particular officer accords with the plain language of the statute, and with the mandate of another statute; section 95-707 R.C.M.1947, now § 46-5-205, MCA, that the warrant be served by one of the officers mentioned in its direction. In this case, Walsh applied for the warrant, the warrant named Walsh, and Walsh served the warrant. Thus, the police in this case followed the statutory procedure, and Sanford is inapplicable.

B. **The totality of the circumstances**: In State v. Sundberg (Mont. 1988), 765 P.2d 736, 45 St.Rep. 2235, this Court discussed the requirements for finding probable cause from an application for a warrant:

> In Jensen, this court decreed that the test for determining probable cause for issuance of a search warrant is the "totality of the circumstances" test set forth in Illinois v. Gates (1983), 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527.
>
> Probable cause to justify search warrants is a sufficient showing that incriminating items, namely items reasonably believed to be connected with criminal behavior, are located on the property to which entry is sought. It does not require that the occupant be guilty of any offense and need only be supported by probable cause to believe that the

5

> items sought will be found in the place to be
> searched and that these are seizable by being
> adequately connected with criminal behavior.
> [citation omitted] Probable cause, defining the
> point at which the individual's interest in privacy
> must yield to the governmental interest in
> investigating criminal behavior by searching for
> incriminating items, is a practical, nontechnical
> concept of criminal procedure . . . "Probable
> cause" is not a prima facie showing of criminal
> activity, but only its probability. [citation
> omitted] Considerably less evidence is required
> for the issuance of an arrest or search warrant
> than for conviction; and legally unimpeachable
> findings of probable cause can rest upon evidence,
> for instance hearsay, which is not legally
> admissible at the criminal trial itself.

Sunberg, 765 P.2d at 738.

Under the totality of the circumstances test, the veracity, reliability, and basis of knowledge of informants remains highly relevant to determining probable cause from the reports of such informants. Gates, 462 U.S. at 230. Seaman contends that the double hearsay nature of the information contained in the application, coupled with the lack of information on the reliability of the informants, demonstrates lack of probable cause under the totality of the circumstances test.

The hearsay nature of the link between information provided by Undersheriff Lee to Detective Walsh does not invalidate the finding of probable cause in this case:

> Observations of fellow officers of the Government
> engaged in a common investigation are plainly a
> reliable basis for a warrant applied for by one of
> their number.

United States v. Ventresca (1965), 380 U.S. 102, 111, 85 S.Ct. 741, 747, 13 L.Ed.2d 684. To enable the magistrate to

make an independent probable cause determination, and to meet the requirement of particularity, it is:

> sufficient if the affidavit recites at the outset, or if it is clear from reading the affidavit as a whole, that it is based in part upon information obtained from other law enforcement officers.

United States v. Kirk (11th Cir. 1986), 781 F.2d 1498, 1505. Walsh swore that the information in the application had been provided to "Butte Law Enforcement Agency Detectives". Thus, the application demonstrates that Walsh relied on information provided by other officers.

Seaman also objects to the application on the grounds that the informants were not shown to be reliable. We hold that the application sufficiently shows the informants' reliability and basis of knowledge. Walsh swore that the informants had provided reliable information in the past. He also stated in the application that one of the informants had extensive knowledge of the drug trade in Butte. The informants described the same criminal conduct on the part of Seaman, e.g., selling heroin in "bags" for $40.00 each over a period of three weeks prior to issuance of the warrant. The list of purchasers from Seaman, and one informant's knowledge of Seaman's address, also supported the application. Thus, facts in the application demonstrated the informants' reliability and basis of knowledge for reporting the existence of criminal activity by Seaman.

C.  Identities of the Informants:  Seaman argues that the trial court erred in failing to order the State to disclose the identities of the informants. To support this argument, Seaman cites State v. Chapman (1984), 209 Mont. 57, 679 P.2d 1210. In Chapman, this Court refused to allow the State to claim the privilege of withholding an informant's

7

location and identity because the informant played a continuous and primary role in the crime, and fundamental fairness required disclosure because the informant's testimony was relevant to his entrapment defense. Chapman, 679 P.2d at 1215. Similarly, in State v. Offerdahl (1971), 156 Mont. 432, 481 P.2d 338, this Court agreed with the trial court that the informant must be disclosed because the informant's testimony would determine the defendant's guilt or innocence. Offerdahl, 481 P.2d at 342.

Seaman makes a different argument. He contends that disclosure of the identities was necessary for determining probable cause. The lower court failed to recognize the distinction between "citizen informants" and informants who themselves are involved in illegal activity, according to Seaman. At the suppression hearing Undersheriff Lee testified that the informants had previously been involved in illegal drug activities.

Rule 502, M.R.Evid., provides the State a privilege to refuse to disclose an informant's identity. The privilege provides confidentiality to encourage reports of criminal activity. Commission Comments, Rule 502, M.R.Evid. Where the defendant claims disclosure is necessary for presenting an effective defense, trial courts must engage in the balancing test from Roviaro v. United States (1957), 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639. The test provides no fixed rule, and in each particular case trial courts must weigh the defendant's needs against the public's interest in the flow of information from informants. Roviaro, 353 U.S. at 62. Trial courts should take into consideration the crime charged, the possible defenses, the possible significance of the informant's testimony, and other relevant factors in balancing the conflicting interests. Commission Comments, Rule 502, M.R.Evid.

We have already held here that the reliability and basis of knowledge of the informants was established within the application. If the law required disclosure of identities and locations of informants to further test

> the truth of the officer's statement that there is an informant or as to what the informant related or as the informant's reliability, we can be sure that every defendant will demand disclosure. . . . The result would be that the State could use the informant's information only as a lead and could search only if it could gather adequate evidence of probable cause apart from the informant's data. Perhaps that approach would sharpen investigatorial techniques, but we doubt that there would be enough talent and time to cope with crime upon that basis. Rather we accept the premise that the informer is a vital part of society's defensive arsenal.

McCray v. Illinois, 386 U.S. 300, 306-07, 87 S.Ct. 1056, 1060, 18 L.Ed.2d 62, 68 (quoting State v. Burnett (N.J. 1964), 201 A.2d 39). The Court in McCray also cited Burnett for the proposition that it should rest entirely with the judge who hears the motion to suppress to decide whether he needs such disclosure as to the informant in order to decide whether the officer is a believable witness. McCray, 386 U.S. at 308. This Court adopted the reasoning from McCray in State v. Sykes (Mont. 1983), 663 P.2d 691, 40 St.Rep. 690. Seaman's only argument goes to discrediting Undersheriff Lee's assertion that the informants existed and that they provided reliable information. Under these circumstances, we hold that the District Court acted within its discretion in refusing to order disclosure.

We also reject Seaman's staleness argument. Information provided by the application stated that Seaman's current peddling of heroin for $40.00 a "bag" was consistent with illegal drug activities in Butte over the past ten years. The application sufficiently set forth probable cause without

9

the assertion that the current activity resembled familiar patterns of the drug trade in Butte. The added information only supplemented the reliability of the current report.

## II.

Seaman argues that the death of Mr. Nygard during the search proves the search was overly intrusive. There is very little evidence that police misbehavior precipitated Mr. Nygard's death. Mrs. Seaman testified that she heard a struggle in the room where Mr. Nygard was seated prior to his collapse. Undersheriff Lee testified he stood in front of Mr. Nygard at the time he collapsed. Lee also stated he thought Mr. Nygard fainted, and that police immediately initiated medical procedures for reviving Mr. Nygard. Thus, this claim is unsupported and provides no basis for excluding evidence.

## III.

Seaman contends that the lower court erred in refusing to grant his motion for a mistrial. The alleged grounds for the motion sprung from the testimony of Detective Walsh on finding the syringe containing heroin in a basket in the bathroom. Walsh testified as follows:

Q Did you at any time search the wicker basket?

A The following day, yes I did.

Q Did you find anything at that time in the wicker basket?

A Again, like I stated, we found the syringes. There were two syringes that were full of this brown liquid. Again, there was other drug paraphernalia there, but that's what we observed.

There was also another item of drug evidence, tincture of opium.

MS. CAUGHLAN [defendant's counsel]: Your honor, we are going to interpose an objection here.

THE COURT: Sustained. Are you moving to strike the answer?

MS. CAUGHLAN: I move to strike the answer.

THE COURT: The answer is stricken. I instruct the jury to disregard his answer.

Seaman's counsel in moving for a mistrial contended that the mention of opium violated the trial court's order prohibiting introduction of other bad acts or crimes, and prejudiced Seaman's right to a fair trial. The lower court denied the motion holding it was sufficient to sustain the objection, strike the testimony from the record, and order the jury to disregard the evidence.

Trial courts properly grant mistrials when, taking all circumstances into consideration, there exists a manifest necessity to do so. State v. Scheffelman (Mont. 1987), 733 P.2d 348, 44 St.Rep. 357. This Court's review of a trial court's denial of a motion for a mistrial is limited to deciding whether the lower court abused its discretion in refusing the motion. Scheffelman, 733 P.2d at 350. The trial court occupies the best position to gauge the reaction of jurors to inadmissible evidence for determining necessity to order a mistrial. State v. Smith (Mont. 1986), 715 P.2d 1301, 43 St.Rep. 449. Mistrials may be properly granted for introduction of inadmissible evidence resulting in harmful error likely to affect the justice of the verdict. State v. LaVe (1977), 174 Mont. 401, 571 P.2d 97. Only where there is a reasonable possibility that inadmissible evidence contributed to the conviction is there reversible error in

11

denying the motion. State v. Brush (Mont. 1987), 741 P.2d 1333, 44 St.Rep. 1495. Where the party opposing admission of evidence objects to offered evidence, and the trial court sustains the objection, strikes the evidence from the record, and instructs the jury to disregard the evidence, "error committed by its introduction is presumed cured." Brush, 741 P.2d at 1335.

The presumption here favors finding no prejudice because the lower court admonished the jury to disregard the statement after sustaining Seaman's objection to the testimony. Moreover, Walsh properly testified that he found substances testing out as heroin and drug paraphernalia in the basket. Testimony on the presence of tincture of opium with these items is not so prejudicial as to warrant a new trial. Thus, no error exists under this issue.

## IV.

Seaman contends that the fact that the jury took so little time in reaching a verdict demonstrates they failed to consider or read the instructions, consider the evidence, or follow their charge. Seaman asserts less than 25 minutes elapsed from the time the trial court submitted the case to the jury and the time the jury brought in its verdict. No authority is provided by Seaman to support reversal for this contention.

Rule 606(b), M.R.Evid., allows inquiry into the validity of verdicts. Section 25-11-102, MCA, provides for investigation of jury misconduct to reveal grounds for a new trial. Seaman has invoked neither the statute nor the rule in his claim on the jury's verdict.

The lower court, in passing sentence on Seaman, stated that the evidence for finding the defendant guilty was "way beyond a reasonable doubt." In reviewing the record, we

12

agree with the lower court. Overwhelming, substantial evidence supports the verdict, and there appears no error of law in the record. Thus, we reject the argument that the jury spent too little time considering the law and facts in this case, and we affirm on all issues.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

13