NO. 93-072

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

STATE OF MONTANA,

      Plaintiff and Appellant,

  V.

DAN RINEHART,

      Defendant and Respondent.
* * * * * * * * * * * * * * *
STATE OF MONTANA,

      Plaintiff and Appellant,

  V.

CHARLES W. McATEE,

      Defendant and Respondent.

APPEAL FROM:   District Court of the Ninth Judicial District,
              In and for the County of Glacier,
              The Honorable R. D. McPhillips, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Hon. Joseph P. Mazurek, Attorney General: Micheal
          Wellenstein, Assistant Attorney General, Helena
          Montana

          Larry D. Epstein, County Attorney, Cut Bank, Montana

      For Respondents:

          James A. Johnson, Shelby, Montana (Rinehart)

          Robert A. Yunck, Cut Bank, Montana (McAtee)

FILED

DEC 02 1993

Filed:

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs:  September 17, 1993

Decided:  December 2, 1993

Clerk

Honorable Jeffrey M. Sherlock, District Judge, delivered the Opinion of the Court.

The State of Montana appeals an order of the Ninth Judicial District Court, Glacier County, suppressing evidence seized from defendant Dan Rinehart's residence pursuant to a search warrant issued July 8, 1992. The District Court held that the affidavit supporting the application for the search warrant failed to establish probable cause. We reverse.

During the first week of June 1992, the Glacier County Sheriff's Office received a referral from Officer Michael Parker, Indian Investigator for the Bureau of Indian Affairs (BIA) on the Blackfeet Reservation, concerning a Crimestoppers' tip received by the BIA. The anonymous tip provided information that Dan Rinehart (Rinehart), a non-Indian resident on the reservation, was growing marijuana at his home.

On or about June 18, 1992, the Glacier County Sheriff's Office received a report from Officer Dale Stone, Assistant Chief of Police of the Columbia Falls Police Department, regarding allegations made by B.W., a thirteen-year-old girl, that Rinehart had sexually assaulted her in his home in Glacier County. This report also stated that B.W. had described a marijuana-growing operation that Rinehart conducted in a concealed room in his home.

Glacier County Sheriff's Deputies Wayne Dusterhoff and Audrey Anderson interviewed B.W. in Columbia Falls on June 25, 1992. In addition to discussing the sexual assault allegation, the deputies questioned B.W. regarding whether Rinehart was growing marijuana.

2

B.W. stated to the deputies that she had personally observed Rinehart's grow operation. She described the location of the concealed room in Rinehart's residence and also described the marijuana plants she had seen. B.W. told the deputies how Rinehart picked the leaves from the plants and dried them out, that he smoked marijuana, and that he had books on growing marijuana.

Officer Stone had told Deputy Dusterhoff that in the past B.W. had provided information to the Columbia Falls police that led to a criminal conviction and that B.W. was a reliable witness.

Based on the information from B.W. and the Crimestoppers' tip, Deputy Dusterhoff submitted an application for a search warrant on July a, 1992, to search Rinehart's residence. The District Court issued the warrant on July 8, 1992, and authorities from the Glacier County Sheriff's Office, the BIA and the FBI conducted the search the following day. During the search, the authorities seized a large amount of drying marijuana and various items used in growing marijuana.

As a result of the search, Rinehart and his nephew, Charles McAtee, were placed under arrest. On October 1, 1992, both defendants filed motions to suppress the evidence seized pursuant to the search warrant on the grounds that the search warrant was unlawful due to lack of probable cause. The District Court conducted a joint hearing on the motions on October 21, 1992.

The District Court issued a memorandum and order on December 11, 1992, granting the defendants' motions to suppress the

evidence.  In its order, the District Court excised two statements from the search warrant application as being intentionally false or made with a reckless disregard for the truth.  The court then examined the application without the excised statements and found that the application did not provide a substantial basis for concluding that probable cause existed under the totality of the circumstances.  Specifically, the court found that the uncorroborated Crimestoppers' tip had little or no probable cause value and that the search warrant application failed to adequately demonstrate the reliability of B.W. as an informant.  The State appeals that order.

The issue on appeal is whether the District Court erred in determining that the application for the search warrant lacked probable cause.

The search warrant application, as excised by the District Court, related the following facts in support of probable cause:

> During the first week in June, 1992, Glacier County officials,  and specifically your affiant, received a referral from Officer Mike Parker, Indian Investigator for the Bureau of Indian Affairs on the Blackfeet Reservation, that the crimestoppers telephone system at Browning had received an anonymous tip that Dan J. Rinehart, a nonmember, was growing marijuana at his home on U.S. 89 North of Browning in the Montana Retreat Subdivision.

> Thereafter, Officer Dusterhoff, your affiant, on the 18th day of June, 1992, received a report from Officer Dale Stone., Assistant Chief of Police of the Columbia Falls Police Department, regarding a sexual abuse investigation and allegations by an alleged victim, BW, Age 13 years, allegedly perpetrated by the above named Defendant Dan Rinehart.

4

BW known to Officer Stone to have been reliable in a past investigation providing information that led to a conviction, also described in detail a marijuana growing operation operated at the Defendant's residence in and on the property above described. Specifically, BW described the location in an upstairs room of approximately 15 to 20 5' tall marijuana plants, books on growing marijuana . . . and grow lights in said room. She described in detail how Dan Rinehart drys [sic] the marijuana grown in this room for his own use. BW also described the location of the room and how it is concealed behind bunk beds in a false wall upstairs in a small bedroom. . . . Thereafter, Officer Dusterhoff verified that Tom Ernst owned property in the Montana Retreat Subdivision and that he had moved to California, as described by his informant BW after residing in the property adjacent to Rinehart.

> BW indicated she has been in the room where marijuana is cultivated and grown in the fall of 1991 and that she had recently, in May of 1992, seen and observed this grow operation as described above.

> BW also described how Rinehart transports marijuana to Flathead County to a residence for resale.

> Officer Dusterhoff, your affiant, has also observed the residence of Dan Rinehart and it conforms, specifically, to the description given him by BW in that it is a two story structure with ample room in the second story for the grow operation described by BW and observed by BW.

The State does not contest the District Court's decision to excise two statements from the application. The defendants, however, contend that the District Court should have excised even more statements from the application than it did.

The issue of whether the District Court erred in refusing to excise additional statements from the search warrant application is one which the defendants should have brought up on a cross-appeal.

5

Defendants did not file such a cross-appeal in this matter. Thus, we refuse to consider this issue.

An application for a search warrant must state facts sufficient to show probable cause for issuance of the warrant. Section 46-5-221, MCA. The probable cause requirement for issuance of a search warrant is constitutional, as well as statutory.

> The Fourth Amendment to the United States Constitution and Article II, Section 11 of the Montana State Constitution both protect a person's right to be free from unlawful searches and seizures by requiring the existence of probable cause prior to the issuance of a search warrant.

*State v. Walston* (1989), 236 Mont. 218, 221, 768 P.2d 1387, 1389.

"To address the issue of probable cause for issuance of a warrant, this Court has adopted the 'totality of the circumstances' test set forth in *Illinois v. Gates* (1983), 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527." *State v. Crowder* (1991), 248 Mont. 169, 173, 810 P.2d 299, 302.

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Gates*, 462 U.S. at 238, 103 S.Ct. at 2332, 76 L.Ed.2d at 548; *see State v. O'Neill* (1984), 208 Mont. 386, 394, 679 P.2d 760, 764. The veracity, reliability and basis of knowledge of informants remain highly relevant factors in determining probable cause under the

totality of the circumstances test. *State v. Seaman* (1989), 236 Mont.

*466, 472, 771* P.2d 950, 953.

A determination of probable cause does not require facts sufficient to make a prima facie showing of criminal activity. Rather, the issuing magistrate must only determine that there is a probability of criminal activity. *O'Neill,* 679 P.2d at 764; *State v. Sundberg* (1988), 235 Mont. 115, 119, 765 P.2d 736, 741.

> In dealing with probable cause . . . , as the very name implies, we deal with probabilities. These are not technical: they are the factual and practical consider- ations of everyday life on which reasonable and prudent men, not legal technicians, act.

*Brinegar v. United States* (1949), *338* U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed 1879, 1890, reh'g. denied 338 U.S. 839; see *Sundberg,* 765 P.2d at 739-40.

The duty of a reviewing court is simply to ensure that the magistrate or lower court had a substantial basis for concluding that probable cause to issue the search warrant existed. *Crowder,* 810 P.2d at 302. This function does not constitute a *de novo review* of the magistrate's determination. *State v. Baldwin* (1990), 242 Mont. 176, 183, 789 P.2d 1215, 1220.

An affidavit supporting a search warrant is to be interpreted by the magistrate and examined by the reviewing court in a common sense, realistic fashion and without a grudging or negative attitude that will tend to discourage police officers from seeking

warrants.   *O'Neill*, 679 P.2d at 764.   Reviewing courts should avoid hypertechnical interpretations of warrant applications and, in doubtful or marginal cases, resolve the issue with the preference for warrants in mind.   *O'Neill*, 679 P.2d at 764.

Amagistrate's determination that probable cause exists should be paid great deference by reviewing courts and every reasonable inference possible should be drawn to support that determination. *Sundberg*, 765 P.2d at 741; *State v. Rydberg* (1989), 239 Mont. 70, 73, 778 P.2d 902, 904.   If a magistrate issues a search warrant after subjecting the application to the totality of the circumstances test, a reviewing court must presume that decision to be correct. *Baldwin*, 789 P.2d at 1220; *State v. Deskins* (1990), 245 Mont. 158, 162, 799 P.2d 1070, 1072.

Probable cause must be determined solely from the information contained within the four corners of the search warrant application.   *State v. Isom* (1982), 196 Mont. 330, 341, 641 P.2d 417, 423; *O'Neill*, 679 P.2d at 763-64.

This case is unusual in that the judge who concluded the application lacked probable cause is the same judge who originally issued the search warrant.   This circumstance, however, should not alter the general law on reviewing determinations of probable cause to issue search warrants as stated above.

The District Court, in determining that the application lacked probable cause, found that the Crimestoppers' tip had little or no

8

value in the probable cause determination and that B.W.'s reliability as an informant was not sufficiently detailed.

The anonymous Crimestoppers' tip, by itself, is not adequate to support probable cause without further investigation to verify or corroborate the information contained in the tip. *State v. Valley* (1992), 252 Mont. 489, 493, 830 P.2d 1255, 1257. This does not mean, however, that the anonymous tip has absolutely no probative value in the probable cause determination. Factors which have little probative value on their own can still provide a basis for a determination of substantial evidence to conclude probable cause existed to issue a search warrant when such factors are considered in combination with other information under the totality of the circumstances test. *State v. Holstine* (Mont. 1993), ___ P.2d ___, ___, 50 St.Rep. 1063, 1065.

Crimestoppers' tips can provide some corroboration and indicate the veracity of other information provided. *Rydberg*, 778 P.2d at 904.

We conclude that the Crimestoppers' tip should be considered under the totality of the circumstances test.

Even without the Crimestoppers' tip, however, we find that the application still provides a substantial basis to conclude probable cause existed to issue the search warrant.

The District Court held that the search warrant application did not adequately relate how B.W. was known to be a reliable

9

informant.  Deputy Dusterhoff, in his affidavit, stated **"BW** known to Officer Stone to have been reliable in a past investigation providing information that led to a conviction . . . .**"** We have previously upheld search warrants where the only information in the application relating to the reliability of the informant was a statement by an officer that the informant had been reliable in the past.  *See e.g., State v. Campbell* (1992), 254 Mont. 425, 838 P.2d 427; *State v. Hendrickson* (1985), 217 Mont. 1, 701 P.2d 1368: *Walston,* 768 P.2d 1387; *seaman,* 771 P.2d 950.  We do not require more.

The defendants also argue that an officer applying for a search warrant must have personal knowledge of an informant's reliability.  We disagree.

An officer may rely on information obtained from other law enforcement officers in an affidavit supporting an application for a search warrant.  *Seaman,* 771 P.2d at 954.  In *Seaman,* we upheld a search warrant where the affidavit recited that the informant had provided reliable information to law enforcement officials in the past.  We did not require the officer swearing to the information in the application to be the officer who personally knew of the informant's reliability.  Thus, we conclude that the application adequately addressed the reliability of B.W. as an informant.

The defendants also argue that Deputy Dusterhoff did not conduct sufficient investigation to corroborate the information received from B.W.  Corroboration of an informant's information

10

through other sources is necessary when the information is hearsay or the informant is anonymous. *Crowder*, 810 P.2d at 302; *State v. Hook* (1992), 255 Mont. 2, 5, 839 P.2d 1274, 1276. In the instant case, the informant was not anonymous nor was the information hearsay.

B.W.'s information was based on her personal observation of marijuana plants and items for growing marijuana in Rinehart's home. An informant's personal observation of criminal activity does not constitute hearsay evidence. It is first-hand evidence. *Sundberg*, 765 P.2d at 740. In addition,

> [w]e have previously held that information of a criminal activity known from observation by a previously reliable informant . . . is sufficient to establish the probability of criminal activity <u>without</u> outside investigation and verification of the reported information.

*Walston*, 768 P.2d at 1390 (emphasis added). This is precisely the situation presented here. B.W. is an informant who has proven reliable in the past and her information was based on personal observation. This combination is enough to make B.W.'s information sufficient to establish probable cause to issue a search warrant.

Finally, defendants contend that the application lacked probable cause because the information it contained was stale. The application for the search warrant states that "BW indicated she has been in the room where marijuana is cultivated and grown in the fall of 1991 and that she had recently, in May of 1992, seen and observed this grow operation as described above." The Glacier County Sheriff's Office received the report of the Crimestoppers'

11

tip in the first week of June 1992, but there is no indication in the application of when the tip was originally telephoned in to the BIA.

"[A] determination of staleness in any given case depends largely on the nature of the property and activity in issue." *Walston*, 768 P.2d at 1390.

> The issue of staleness cannot be resolved by a mechanical reference to the number of days between the facts relied upon in the affidavit and the time the warrant is issued. Rather, as the court stated in *Andresen v. State* (Md.App.1975), 24 Md.App. 128, 331 A.2d 78 aff'd *sub. nom. Andresen v. Maryland* (1976), 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627:

> "The likelihood that the evidence sought is still in place is a function not simply of watch and calendar but of variables that do not punch the clock: the character of the crime (chance encounter in the night or regenerating conspiracy?), of the thing to be seized (perishable and easily transferable or of enduring utility to its holder?), of the place to be searched (mere criminal forum of convenience or secure operational base?), etc. The observation of a half-smoked marijuana cigarette in an ashtray at a cocktail party may well be stale the day after the cleaning lady has been in; the observation of the burial of a corpse in a cellar may well not be stale three decades later. The hare and the tortoise do not disappear at the same rate of speed."

*State v. Pierre* (1984), 208 Mont. 430, 436-37, 678 P.2d 650, 654.

The Crimestoppers' tip and B.W.'s observations in the fall of 1991 might well be stale when considered individually. When a criminal activity is continuing in nature, however, more time may elapse between the observation of the activity and the application for the search warrant without negating probable cause. *Walston*,

12

768 P.2d at 1390. When these two tips are combined with the more current observation by B.W. in May of 1992, only two months before the search warrant issued, the earlier tips carry greater weight in the probable cause determination. *Walston*, 768 P.2d at 1391; *Campbell*, 838 P.2d at 429.

Considering the continuous nature of a marijuana growing operation, the information provided in the application for the search warrant was not too stale to prohibit a determination of probable cause under the totality of the circumstances.

The application provided a substantial basis for the probability that criminal activity was occurring on Rinehart's property. We hold that the District Court erred in determining that the application for the search warrant did not set forth sufficient facts to establish probable cause.

Reversed and remanded.

_____
Hon. Jeffrey M. Sherlock, District
Judge, sitting in place of Justice
William E. Hunt, Sr.

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

_____
Hon. Ted L. Mizner, District
Judge, sitting in place of
Justice James C. Nelson

14

December 2, 1993

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:


Hon. Joseph P. **Mazurek,** Attorney General
Michael Wellenstein, Assistant
Justice Bldg.
Helena, MT 59620

James C. Nelson, County Attorney
Larry D. Epstein, Deputy
P.O. Box 428
Cut Bank, MT 59427

James A. Johnson
Attorney at Law
P.O. Box 731
Shelby, MT 59474

Robert J. Yunck
Attorney at Law
501 E. Main St.
Cut Bank, MT 59427


ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
    Deputy